AMERICAN OIL CO. *et al. v.* INTERSTATE WHOLESALE GROCERS, INC.*

(Division B. April 6, 1925. Suggestion of Error Overruled May 25, 1925.)

[104 So. 70. No. 24670.]

COUNTIES. *Private citizen cannot sue on behalf of county to challenge validity of lease of part of courthouse square, property of county.*
Under section 309, Code of 1906 (Hemingway's Code, Section 3682), providing, "but suit shall not be brought by the county without the authority of the board of supervisors, except as otherwise provided by law," a private citizen cannot bring suit on behalf of the county to challenge the validity of a lease of a part of the county's property, being a part of the courthouse square; no specific authority to bring such suit being given by any statute.

*Headnote 1.   Counties, 15 C. J., Sections, 377, 378 .(1926 Anno).

APPEAL from chancery court of Marion county. .
HON. T. P. DALE, Chancellor.
Suit by the Interstate Wholesale Grocers against the American Oil Company and others.   From a judgment overruling motion to dissolve, and sustaining bill, de-fendants appeal.   Reversed, and appeal dismissed.

*T. C. Hannah, James Simrall Jr.,* and *Hall & Hall,* for appellants.

Brief for appellant on the question of the right of the appellee to bring this suit.   In the voluminous brief for appellee counsel contend that this suit does not come

within the rule laid down by Section 309, Code 1906, Hemingway's Code, sec. 3682.

The question is not free from some difficulties, and to arrive at the correct answer, it will be necessary for us to look for a moment at our system of county government. Under our system of law the board of supervisors is vested with control over the affairs of the county. This control is over the property of the county, its officers and servants, its financial affairs, and, as expressly laid down by the statute just mentioned, over all suits by or in the name of the county. What was the purpose of the legislature in vesting the board of supervisors with this full and complete control over suits by or in the name of the county? In answering this inquiry we must not lose sight of the fact that the board of supervisors is a part of the judicial system of our state, a court just the same as our circuit and chancery courts and having just as full, final and complete jurisdiction over the subject-matters committed to it by the legislature as the circuit and chancery courts have over the subject-matters committed to them.

The legislature, recognizing this principle, came to the question of suits by or in the name of the county. It saw the wisdom at once of vesting sole control over these suits in the board of supervisors. A question arises as to whether or not it would be proper to bring a suit against some citizen. This question must be considered by the board of supervisors, sitting as a court, we must remember. The board of supervisors decide, and so adjudicate, that the proposed suit is not well founded and that it would be unwise to involve the county in this litigation.

The reason for this is apparent. Were the rule otherwise, it would leave the way open for the citizens of the county to be harassed and oppressed, needlessly, by suits brought against them in the name of the county and by the county, by other persons for their own selfish gains.

Appellee was required by law to submit to the board of supervisors the state of facts upon which it wished

the county to predicate a suit. It did so, and the board of supervisors, sitting as a court and with full juris-diction in the premises, decided that the proposed suit was not well founded in fact or in law. Did appellee complain of this judgment? It had the right of appeal from the order of the board of supervisors—the method and the only method pointed out by the statute by which it could complain of the action of the board.

The board of supervisors have adjudicated this whole matter once, and we maintain and have always main-tained that its adjudication stands there as a bar to any inquiry into the matter by the chancery court. Now as to the second proposition advanced by counsel—that this suit comes within the exception provided by the last clause of section 309, Code of 1906, which provides that suit shall not be brought by the county without authority of the board of supervisors, "except as otherwise pro-vided by law." However, counsel have failed to point out to the court the provision of law authorizing or per-mitting the appellee to bring this suit.

Counsel discuss three propositions at great length and cite many cases in support of their contentions. We submit that an examination of these three contentions, and of the facts and law on which counsel base these con-tentions will show that they are not well founded and that neither of them provides a basis on which appellee can rest its right to bring this suit.

(A) In the first place, we wish to take issue most emphatically with the correctness of counsel's statement of facts, particularly with the statement that appellee's fire insurance rate will be increased twenty per cent, and that the fire hazard to which appellee's building will be exposed will be greatly increased. The appellee made both allegations in its bill, and both allegations are cop-ied into its brief, but it wholly failed to sustain either of them on the trial of the case.

If the board of supervisors saw fit to erect a filling station on this ground for the purpose of supplying gaso-line for road trucks or for other legitimate county pur-

poses, the appellee would have no more cause of action than if the owner of the private property adjoining appellee saw fit to put a filling station on his property. Indeed, if the appellant should take possession of the private property adjoining appellee, without a shadow of title, and proceed with the erection of a gasoline filling station thereon, most assuredly the appellee would have no standing in court to restrain the appellant because of the want of title.

In the second place, we maintain that there is no showing on this record that the location of this gasoline filling station increases the fire hazard to appellee or otherwise endangers his property.

Learned counsel for appellee laboriously endeavors to sustain their right to bring this action by showing that appellee's tax burden will be increased by this act of the board of supervisors. We feel warranted in saying that this contention is absolutely without support on this record either on fact or reason. The plain simple truth is: As the result of this lease, the appellant pays into the treasury of Marion county, sixty dollars per year; and the appellee and his fellow taxpayers, therefore, pay in sixty dollars less; and then the appellant proposes to erect a filling station on this piece of ground, and will naturally pay into the treasury of Marion county some more revenues, and then appellee and his fellow taxpayers will pay into the treasury that much less. We make no great claim as to the benefits that will accrue to Marion county from the erection of this filling station; but sixty dollars per year is six per cent on one thousand dollars, and sixty dollars per year for twenty-five years is fifteen hundred dollars, a very nice sum of money for a lot of ground forty by sixty feet.

When we come to look at the several cases and other authorities cited by counsel, we at once see their inapplicability to the facts of the case at bar. Every case and authority is one where the particular act or thing sought to be enjoined or abated was either a public nui-

sance or violative of some positive provision of law or resulted in an increase of the taxpayer's burden.

(B) Counsel's second main proposition is that the lease to the lot of ground here in controversy imposes or will impose, an additional burden upon appellee and the other taxpayers of Marion county. The only fact found by the learned councellor was the fact that, in law, the board of supervisors was without authority to make the lease in question, and that hence the lease was void.

In the face of the record, and especially this direct finding of fact by the lower court that the appellee's and other taxpayers' burdens will not be increased, we deem it useless to further answer or discuss counsel's contentions in this respect.

(C) We particularly object to the statement that "the dedicator of this courthouse square, the commissioners to whom the Townsite was conveyed by Lott, acting for the county, sold all the lots of the Phillips Survey, other than the courthouse square, and sold and conveyed this lot 17 (appellee's lot), and sold these lots and especially appellee's with the right in the lot owners and in this appellee to always insist that not only the dedicated streets, but the courthouse square should always be used for the purposes dedicated." There is not a word in the record anywhere, and we have examined it closely, to support this statement. A good part of the statements and conclusions of fact in counsel's brief, under this point of "dedication," are also without any basis in the record.

The lot of land on which the Marion county courthouse is located, and of which the lot here in controversy is a part, was conveyed to Marion county by a general warranty deed, without any restrictions as to its use.

The board of supervisors of Marion county, acting under the laws of this state giving them complete control over courthouse property, and the right to sell or dispose of same if not needed longer for the purpose for which acquired, made the lease in question.

What question of dedication is there in this?

Counsel have overlooked or disregarded the rights of the board of supervisors to dispose of courthouse property when not longer needed for county purposes, as announced by the supreme court in *Rotenberry* v. *Board of Supervisors,* 67 Miss. 470, 7 So. 211, and conferred by sections 322 and 323, Code of 1906, sections 2695 and 3696, Hemingway's Code. Certainly this cannot be controverted, and yet under counsel's reasoning in this case the county must be deprived of this right. They may insist that this statute could not in any event be applicable to the case at bar, because they say that the lot of ground in question is now needed by the county for county purposes. But again they assume a fact not supported by the record, and expressly found against them by the chancellor. The learned chancellor decided this case in the light of section 323, Code of 1906, and found that the board of supervisors would have had the right to sell the lot, but could not lease.

Can we say, or can the court say, that appellee would have had any other or different, or less right or rights if the county had never owned the lot now held by appellee; or if appellee had obtained this lot through some other chain of title? Where is the contract and where is the consideration that differentiates the rights of the appellee from those of every other property owner that ever owned property in any other county site? Where is the contract and where is the consideration that authorizes this appellee to presume to say to Marion county that it cannot let someone else use some particular piece of land merely because appellee now owns a lot, the title to which came through Marion county. This question has long since been settled adverse to learned counsel's contention by our own court in *Quitman County* v. *Stritze,* 69 Miss. 460, 13 So. 35; 70 Miss. 320, 3 So. 36.

There are quite a number of authorities cited in appellee's brief, none of which are applicable to the facts in this case, nor authority for complainant's right to bring this suit.

In closing we wish to revert to the question propounded to us by the court, namely: ''What right has the appellee to bring this suit?'' The general rule of law is that the county, or perhaps the state, is the only party that may bring a suit of this character. This will at once appear to be correct when we analyze the nature of the action. Here is a county assuming to deal with land, in the case at bar seeking to lease it to a private citizen, though the case would not be different were it assuming to buy land or lease it from a private citizen. The inquiry arises: ''Has the county any right to do this?'' Who may demand an answer from the county? The state, we answer. Why? Because the county is an integral part of our state government, a branch of our sovereign, exercising a part of the sovereign powers of the state, and no more subject to be hauled in to court to account for its actions than the state itself. It was for this and the many other cases in which the county or municipality and their officers may seek to exceed their lawful powers that the remedy by writ of *quo warranto* was provided.

If the board of supervisors had exceeded its powers in executing the lease here in question, then it is for the state to step in and demand: ''By what authority do you do this?'' Or if the appellants are wrongfully occupying the leased premises, then the county, and the county only, may step in and demand: ''What doest thou on my land?''

It is true that some exceptions are noted to this rule, which permit the citizens to come into court and make the demand. An examination of all of these cases which so hold, will divide them into two classes—those in which the load on taxation has been or will be increased, and those in which the act or thing sought to be prevented or guarded against will be a public wrong, either as a public nuisance or in and of itself unlawful, and in this latter class of cases there must also be the additional element of some special damage to the complaining party.

The reason for the rule is simply this—and it is so sound that we do not consider it worth while to cite any authorities in support of it, that the duty of enforcing the public statutes of the state is entrusted to the state itself, and not to its several citizens. The case at bar cannot be resolved into either class of the exceptions which will permit the citizen to sue, and we earnestly submit that for this reason this case should be reversed and remanded.

*Rawls & Hathorn,* for appellee.

Brief of Appellee (Complainant) in Response to Question Propounded by the Court on its Right, as a Private Person, to Prosecute This Suit. We respectfully submit that under the allegations of the bill of complaint, and the practically undisputed testimony in this case, appellee has a right as a private citizen to prosecute the suit and to the injunctive relief sought.

Section 309, Code 1906, Hemingway's Code, section 3682, is not applicable here. This is not a suit by the county, nor is it in the name of the county, but, as a matter of fact it is a suit against the county as well as against appellants, and, of course it is not necessary to secure the consent of the board of supervisors in order to sue the county. Appellee's application to the board of supervisors for authority to prosecute the suit in the name of the county, certainly should not be considered to its prejudice, or considered as an admission on the part of appellee that it did not have the right to prosecute the suit in its own name. Appellee's effort to have the county prosecute the action must appear clear to the court. In the first place appellee felt, as any citizen of the county would, that if property of the county was being put to an unlawful use, or was being squandered, or dissipated, that the absolute duty rested upon the county to prosecute the necessary action or actions to abate the wrong. If the county should decline

to do so, as happened in the case at bar, then it is made clear to this court, as it was to the court below, that appellee had exhausted every means known to it to have this wrong abated by the public authorities, and this unlawful use of public property stopped and nothing was left for it to do but to prosecute an action in its own name. This court now knows from this record, as the trial court knew, that if it shall be held that appellee is without authority as a property-holder and a taxpayer, either or both, to prosecute this suit, and cancel this unlawful lease, if it is unlawful, then every door is closed not only against appellee as an adjoining property holder, but against the entire public, and a great and irreparable wrong has been perpetrated and the courts are unable to give relief.

If appellee cannot prosecute this suit, then the courthouse square can be leased out by the board of supervisors, or the various court rooms themselves, or the entire courthouse as for that matter, or the jail, and the county occupy the relation of landlord with all its responsibilities and nobody could question the validity of the lease, except the county, and if the county refused then there would be no remedy for the wrong, no matter how flagrant or how much the public generally might suffer or be inconvenienced thereby. We respectfully insist that this cannot be law.

Discussing now the right of appellee to prosecute this suit, conceding, for the sake of argument here, that "complainant has no interest in the property leased or attempted to be leased," and conceding that "no tax burden is imposed upon complainant by such lease." The authorities hold uniformly and practically without dissent that appellee, under the facts alleged and proven in the case, has the right to prosecute the suit, and to injunctive relief. 14 R. C. L., 329.

In support of this doctrine the following authorities are cited by R. C. L.: *People's Gas Co.* v. *Tyner*, 31 A. S. R. 433; *First National Bank Mt. Vernon* v. *Sarlls*, 28 A.

S. R. 186, directly in point and sustains complainant's right to prosecute this suit. 19 R. C. L. 1163 holds: "So also equity will enjoin at the instance of a citizen and taxpayer the conveyance away or diversion to unlawful uses of municipal property or funds." *Spencer* v. *Joint School District,* 22 A. R. 269, supports our contention. 32 C. J. 271, et seq., under the title protection of public property, states the rule.

The right of a private citizen to prosecute the suit and to injunctive relief is here clearly recognized and stated where such citizen suffers special injury as in the case at bar.

In *Whitfield* v. *Rogers,* 26 Miss. 30, which is a case seeking to enjoin the erection of a mill dam, and which was confessedly a public nuisance, the court, upheld the right of a private citizen to prosecute an action in equity to abate the nuisance.

In *Canton Warehouse Co.* v. *Potts,* 69 Miss. 33, which was a suit by a private individual to prevent obstruction of public street this court upheld the right to prosecute the suit and to equity relief.

In *Boom Co.* v. *Dixon,* 77 Miss. 592, Dixon and others constructed a boom across Pascagoula River. The Boom Company alleged special damage to itself and sought to abate the admittedly public nuisance by mandatory injunction, and the chancellor denied the injunctive relief. The court reversed the chancellor and held the Boom Company entitled to the injunction. See *Board of Supervisors* v. *Lumber Company,* 103 Miss. 338.

The next proposition we desire to discuss is whether or not complainant (appellee here), is entitled under the pleading and proof in this case to prosecute this suit as a taxpayer.

One of the things that give a taxpayer the right to institute action as in the case at bar is that the wrong will increase his tax burden. It is not material that the increase may be infinitesimally small, if the burden is or will in all probability be increased at all, then the

right to injunctive relief lies. *Spencer* v. *Joint School District, supra.*

The bill alleges and the proof warrants the chancellor in finding that the erection and operation of a gasoline filling station and the keeping and storing of gasoline thereon, will increase the hazard from fire to the county property as well as the insurance rate, on the courthouse property, and of course either a destruction or damage of said public property by fire or the payment of additional insurance premium will increase complainant's tax burden.

The bill alleges and the proof and common knowledge of the growth of the city of Columbia, warrants the chancellor in finding: "That in the course of years the courthouse and other public buildings of the county will necessarily have to be enlarged and the described pretended leased premises will be needed for this purpose, and not being able to use same, other property will have to be bought and this will mean increased taxation and an increased financial burden, not only upon complainant, but the entire taxpaying public as well."

Of course there is no principle of law better settled than that if the allegations in the bill and the proof will support the chancellor's ruling, his finding will not be disturbed and also that where there is no specific finding of fact, the chancellor will be presumed to have found all facts (if the testimony will warrant it at all) necessary to support his action if it was the case and the decree rendered. 7 R. C. L., 966; 14 R. C. L., 329; 32 C. J., 270, treating on Injunctions, par. 425. *Willard* v. *Comstock,* 46 A. R., 657 (Wis.), upholds the right of a taxpayer to sue under somewhat similar circumstances.

It is impossible to see any distinction between the misappropriation of the funds and of the property of the corporation. If the funds cannot be taken from the treasury and divided between the supervisors and strangers by a corrupt combination and fraudulent scheme, neither could its property be so divided, or sold

to the conspirators for a grossly inadequate price. The taxpayer is liable to suffer by taxation from both causes alike. *Mayor of Baltimore* v. *Gill,* 31 Mo. 375; *Colburn* v. *Chattanooga,* 17 Am. Law Reg. 191; *Newmeyer* v. *M. & M. R. R. Co.,* 52 Mo. 81.

Finally, according to the facts alleged in the complaint, and which for the present purpose must be taken as true, this was one of the most outrageous cases of fraud in which public officers participated as well as in the fruits of it, ever brought into court.

See *McCord* v. *Pike,* 2 A. S. R., 85 (Ill.), and note at page 97, where the following rule is announced and authorities are there cited from almost every state in the Union in support of it: "RESIDENT TAXPAYERS MAY SUE —While there are numerous and well-considered opinions in New York (see cases below) prior to the statute (1872, chap. 161) and in other states which followed the New York cases and the line of reasoning adopted by them, to the effect that a private citizen and taxpayer cannot, in the absence of a special interest or injury to his individual rights not suffered by him in common with all other taxpayers, maintain an action in equity by himself, or with others, to prevent any threatened illegal act which might be oppressive in its results to the whole community by creating unjust or excessive taxation, yet the more recent cases determine by a great preponderance of authority, that a single taxpayer or a number of them, may have a remedy in equity upon his or their suit to prevent municipal or *quasi*-municipal, corporations and their officers from levying unauthorized taxes, or from doing any illegal act in relation to the corporate moneys or property whereby the burden of taxation would be unjustly increased; and this relief is granted, in many cases, upon the ground that such taxpayer would, if the threatened illegal act complained of were consummated, be specially injured as a taxpayer, and that such injury would be irreparable."

See also: *Crompton* v. *Zabriskie,* 25 L. Ed. 1071. Our court in *Belzonia Drainage Commission* v. *Winn,* 98 Miss. 366, settles the question in Mississippi with this terse and pointed language: ''The appellee is a taxpayer in the district created by it, and, unless enforcement of the act is prohibited, he will be compelled to pay out money under a void law, and, of course, he can maintain the suit.'' See, also, *Rowzee* v. *Pierce,* 75 Miss. 857; 14 R. C. L. 329; 22 Cyc., 889 and 898; *Roper et al.* v. *McWharter et al.,* 77 Va. 215.

The last proposition that we shall discuss is whether or not, appellee as a lot-owner has the right to prosecute the action so as to prevent the courthouse square being put to a use foreign to its dedication. It is our contention that any lot holder of the James Phillip, Jr., Survey or plat of Columbia (R. p. 77) and especially the owner of Lot 17 (appellee's lot) which fronts directly on courthouse square, has a right to prosecute an action to prevent the property being used for purpose foreign to its dedication.

This Phillips plat made in 1818, and which designated the square as courthouse square, and which was approved by the legislature and directed to be recorded, by act approved January 29, 1819, and which dedicated not only the public streets and alleys, but also this square as the place fixed on by the commissioners acting under authority of the act of the legislature approved January 13, 1818, Laws 1818, p. 146-149: ''For the erection of public buildings, to-wit, 'Courthouse, jail and stocks,' was a dedication of the square for courthouse, jail and stocks and for no other purpose, and the court will bear in mind that this dedication was made, not by the original owner, John Lott, Sr., but by the commissioners in whom title vested for the use and benefit of the county. Hence we say that appellee has a right under the general law and especially under the law as it prevails in this state to prosecute this action to prevent this square from being used for any purpose except that to which it

has been dedicated, and to that extent appellee has an actual interest and an enforceable right in the square attempted to be leased. 18 C. J. 48, par. 26; 18 C. J. 131; *Briel* v. *City of Natchez,* 48 Miss. 434; *Rowzee* v. *Pierce,* 75 Miss. 857; *Church* v. *City of Portland,* 6 L. R. A., 259, and the exhaustive note thereto; *Daniel* v. *Board,* 1 Freeman Ch. Rep. 59; *Carter* v. *Portland,* 4 Or. 339; *Price* v. *Thompson,* 48 Mo. 361; *Commonwealth* v. *Rush,* 14 Pa. St. 186; 5 Am. & Eng. Enc. L., 418, Note 1, and the authorities; *Douglass* v. *City Council of Montgomery et al.,* 24 So. (Ala.) 745; *City of Chicago* v. *Ward et al,* 48 N. E. 927; *Maywood Co. et al.* v. *Village of Maywood,* 6 N. E. 866.

There is, however, one peculiarity in the case at bar and in which it differs from most cases that we want to call the court's attention to. That is that the county in the case at bar was the dedicator of the property as a courthouse square and was the original grantor of appellee's right to demand that the dedicated property be used for the purpose dedicated, and therefore a property-holder would be the only one that could or at least would prosecute this action. The county would not likely sue itself, and it, the dedicator if you please, is a party to the illegal effort to divert the courthouse square from its dedicated use. If appellee or some other lot owner cannot prosecute the action, then this dedicated property can, by the dedicator itself be diverted from its dedicated use and used for any kind of purpose and no one could prevent it—again a palpable wrong without a remedy. We say that to state the proposition is to answer it. The fact that no one else, under the peculiar facts in this case, can or will prosecute the action, is proof positive that the adjoining property-holder can. 8 R. C. L., 914. In *Mrs. Mary Jones et al.* v. *Mayor and Board of Aldermen of the City of Jackson,* 104 Miss. 449, involving the building of the public Library on Smith Park, our court held that even the legislature would be without authority to change the purpose for which this plot of ground was dedicated by the state itself in 1838.

While in this case the court did not hold specifically that Mrs. Jones, a mere property-holder in the city of Jackson, could prosecute the suit, for the state was permitted to join with Mrs. Jones in the suit, yet it did not hold that she was not a proper party, nor was her right to prosecute the suit even questioned either by the court or by learned counsel for the city. See also 3 Dillon on Municipal Corporations (5 Ed.), 1746.

*Lamar County* v. *Clements,* 49 Texas, 347, is an interesting case, very much like the case at bar except that the use of the courthouse square had been abandoned as a courthouse square, but at the time of the sale of the surrounding lots it was a courthouse square and a courthouse was erected on it. See also, *Riverside* v. *McLain,* 210 Ill. 308.

In closing we call attention to chapter 501, Laws 1920, which will give the court an idea as to whether or not the legislature thought that boards of supervisors had authority to lease courthouse property, even where it had been abandoned for that particular use. The court knows that Pearl River county has a beautiful courthouse, erected on a large lot of ground adjoining the old courthouse square. This old courthouse was not destroyed, and certain parties wanted to lease it for hospital purposes, and the legislature found it necessary to pass a special act authorizing the board to make the lease.

Argued orally by *Jas. Simrall, Jr.,* for appellants, and *C. V. Hathorn,* for appellee.

Etheridge, J., delivered the opinion of the court.

The Interstate Wholesale Grocers, Inc., filed a bill in the chancery court of Marion county seeking to cancel a lease made by the board of supervisors to the defendants, the American Oil Company et al., and set out in said bill that the complainant is a corporation, under the laws of Louisiana, authorized to do business in Missis-

sippi, and that it is engaged in the wholesale grocery business in the city of Columbia; that the appellant the American Old Company is a corporation under the laws of Mississippi; that the defendant Hubbard is an adult resident citizen of Marion county; that defendant Robertson is also an adult resident citizen of Marion county; that the defendants Broom, Newsom, Daniels, Forbes, and Simmons are the duly elected, qualified, sworn, and acting members of the board of supervisors of Marion county, setting up the districts each member of the board represented.

It is further alleged that Marion county is the owner in its sovereign capacity, and for the use and benefit of the public, and especially of the resident citizens, inhabitants, and taxpayers of said county, of that certain plot or tract of land situated in the city of Columbia in said county and and state known as "Courthouse square;" that said courthouse square is three hundred and forty feet north and south, and three hundred and thirty feet east and west, and is bounded on the north by Meek alley, on the east by Honey alley, on the south by Bone alley, and on the west by Beef alley; that said land was conveyed to the county on May 22, 1821. The bill further alleges that said courthouse square had been set aside, dedicated, owned, and used as the courthouse square for more than one hundred years, and that during that period of time a courthouse and jail had been built thereon, and that said buildings had been thereon, and especially the courthouse building, for more than one hundred years.

It is further alleged that the courthouse square is not actually covered by the courthouse and jail buildings, and has been used during all these years as a public commons, where horses have been hitched by people coming to said town of Columbia on public business, and where people have been wont to gather for various and sundry public purposes, and where of recent years automobiles have been parked, and that said square has been used for

many other purposes, useful and beneficial to the general public, and that no part of said courthouse square has ever been set aside or dedicated by law or used for any private use or benefit, or for the private use or benefit of any individual or association of persons.

The bill then alleges that on the 5th day of September, 1923, and without authority of law, the board of supervisors of said county did attempt to lease for a period of twenty-five years to said Robertson that certain strip of land in the city of Columbia, Miss., and east of the courthouse proper and west of Honey alley, and south of the traveled way from said Main street to Broad street, and south of Broad street, and being more particularly described as: Commencing at a point on the east margin of Honey alley one hundred and twenty feet north of Bone alley, the same being the point where the south margin of Broad street intersects the east margin of Honey alley, thence running west thirty feet, or to the west margin of Honey alley, the place of beginning, thence west forty feet, thence south sixty feet, thence east forty feet, thence north along said west margin of Honey alley sixty feet to place of beginning; that on said date said board of supervisors pretended to pass or adopt an order or resolution authorizing and directing T. S. Lewis, the then acting president of said board, to execute a lease to the said premises on behalf of the board of supervisors, being a part of said courthouse square, for a period of twenty-five years to said Robertson, at and for the sum of five dollars per month, a copy of which order is made an exhibit to the bill.

It is then alleged that the board of supervisors, in pursuance of the said order, attempted to execute a lease for and on behalf of said Marion county to that part of the said courthouse square already described above to said Robertson, and that said Robertson attempted to convey a two-thirds interest in and to his pretended rights to the defendant Hubbard, and that said Robertson and Hubbard attempted to convey their pretended

138 Miss.—52.

rights in and to said lease to the defendant the American Oil Company; all of which instruments of conveyance being made exhibits to the bill. It is then alleged that said order and pretended lease are absolutely null and void because the board of supervisors did not have power to make a lease to the said property; that said lease was not made to the highest bidder, etc.

The bill then alleged that complainant was the owner of a certain lot of ground described in the bill which faces the courthouse square; that on said lot complainant has a large frame building, in which it conducts a grocery and grain business; that complainant is a large taxpayer of the county, and charges on information and belied that the American Oil Company contemplated immediately or in the near future the erection of a gasoline filling station on said premises, where it proposes to deal in gasoline, oil, etc., and other inflammable materials; and that, if the American Oil Company is permitted to erect the same, it will cause great financial injury to the complainant. It is further alleged that the erection of any kind of a building upon the described premises will increase complainant's insurance rates and fire hazard, and that, if said American Oil Company is not enjoined from so doing, and if said pretended lease is not canceled and said property restored to Marion county as a part of the courthouse square, unincumbered by such lease, complainant will suffer great and irreparable damage and injury. The bill then set forth that the petitioner had requested the board of supervisors for authority to bring suit on behalf of the county to cancel said lease, which authority the board of supervisors refused to give.

The defendant the American Oil Company answered the bill, and admitted the allegations as to its lease and purpose to erect a building, but asserted the validity of said lease, and denied that complainant would be injured or that its hazard or insurance rate would be increased, and challenges the power of the complainant to

substitute its judgment for that of the board of supervisors, and alleges that the order of the board of supervisors conclusively adjudicates the fact, and avers that said plot of ground so leased was not then being used for any public purpose, and avers that the board of supervisors of Marion county is authorized and permitted by law, in their discretion, to lease any lands belonging to said county, when and for the time the same may not be required or needed by said county for any public or governmental purpose, and denies the allegation of the inadequacy of the consideration of the lease, and denies that the bids were not properly let in accordance with law, etc. The board of supervisors passed an order refusing to recognize said suit, and paid no attention to it.

The chancellor sustained the bill, and overruled the motion to dissolve, from which judgment this appeal is prosecuted.

When the cause reached this court for consideration, we raised the question as to whether the bill could be maintained without authority from the board of supervisors, and this question has been fully and ably briefed.

Section 309, Code of 1906 (Hemingway's Code, Section 3682), in its concluding part provides: "But suit shall not be brought by the county without the authority of the board of supervisors, except as otherwise provided by law."

We have found but two instances in which a private citizen is authorized to bring suit.

Section 293, Code of 1906 (Hemingway's Code, section 3665), under heading "Bond and its effect," provides for a bond by each member of the board of supervisors, and among other things provides:

"And such bond shall be a security for any illegal act of such member of the board of supervisors, and recovery thereon may be had by the county for any injury by such illegal act of such member; or any taxpayer of the county may sue on such bond, for the use of the coun-

ty, for such injury, and such taxpayer shall be liable for all costs in case his suit shall fall.''

The injury which this section provides for is the injury to the county resulting from an illegal act of a member of the board of supervisors. The bill here does not present any injury to the county as such by the act of the board of supervisors; conceding for the purpose of the argument only that such act was illegal, the section does not authorize any taxpayer to bring any action against the county as such. The action here brought is against the individual members of the board of supervisors, nor for an improper exercise of their powers and duties, but for illegal acts which they are not authorized to perform or which they failed to perform in the way provided by law to the hurt of the county as a county, and not for injuries which may result to particular persons.

Section 346, Code of 1906 (Hemingway's Code, section 3719), provides: ''If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer who will sue for the use of the county, and who shall be liable for costs in such case.''

The bill does not state a case under this section because the county has not appropriated any money to an object not authorized by law, and has not by its act created any obligation by the county to pay out any money in the future.

It is clear that the bill does not come under the provisions of either of the above sections.

It is a familar rule that, where the law specifies conditions upon which an action may be maintained or a thing done, the naming of certain things will by implication exclude the things not named under the rule ''*expressio unius est exclusio alterius.*''

It would be manifestly confusing to public business and troublesome to the officers charged with the administration of public affairs if any citizen of a county may at any time challenge the legality of the actions of the board of supervisors or of any of its contracts. Where the board undertakes to impose a burden upon a citizen without authority of law, he may then contest the legality of the action, not on behalf of the county, but to vindicate his own rights if he be affected by such action; that is to say, if he would have an additional burden imposed on him by such act of the board. But this does not authorize him to litigate contracts made by the county in which he has no property or financial interest. Prior to the enactment of the clause of section 309, Code of 1906, (Hemingway's Code, section 3682), above set out, a citizen who was a taxpayer could in certain cases intervene to protect the public rights. But the law has, as we think wisely, provided that the board of supervisors should have discretion to say when a suit should or should not be brought in behalf of a county where the law did not expressly provide to the contrary, and before a suit can be brought on behalf of the county the statutory authority must be pointed out authorizing it. We have statutes in certain cases that give to certain officers rights in particular cases to bring such suits, but, where no provision is made otherwise, the board of supervisors have the sole control of bringing such suits. In our opinion this *status* makes for the public welfare and for the stability of a county's business operations. A county cannot be harassed by suits brought by that class of benevolent citizens who feel called on to intermeddle by way of lawsuits with any action taken by the county authorities which does not meet with their approval.

In our view the suit here brought is unauthorized, and the judgment of the court below will be reversed and the appeal dismissed.

*Reversed and dismissed.*