McKee *et al. v.* Hogan.[*]

(Division B.    Nov. 22, 1926. Suggestion of Error Overruled Jan. 17, 1927.)

[110 So. 775.   No. 25876.]

1. INJUNCTION. *One may enjoin injury to his person, property, or reputation done by public officers claiming to act under legal authority.*

A person has the right to maintain an action to restrain the infliction of an injury to his person, property, or reputation, regardless of

whether that injury is done by public officers claiming to act under legal authority.

2. SCHOOLS AND SCHOOL DISTRICTS. *After money from bond issue is paid into proper depository, taxpayer or patron of school having only general public interest may not enjoin public officers from disbursing it until he applies without success to proper public authority for relief; bill by taxpayer or patron of school, having only general public interest, to enjoin public officers from dealing with proceeds of bond issue must be on behalf of public and invite other taxpayers to join; bill by taxpayer or patron of school, having only general public interest, to enjoin public officers from dealing with proceeds of bond issue, must allege suit is brought on behalf of general public and failure to secure action by public officers (Hemingway's Code, section 3683).*

Where a bond issue has been carried by popular vote, and the bonds issued and sold and the money paid into the proper depository, a taxpayer or patron of a school having no interest different from that of the general public is not entitled to maintain an injunction to restrain public officers from dealing with such fund until he has first applied to the proper public authority for relief in the premises and failed to secure redress therein, and then he must bring his bill on behalf of the public and invite the other taxpayers to join in the suit, and the bill must have proper allegations showing that the suit is brought on behalf of the general public and a failure to secure action by the public officers in the public behalf.

3. INJUNCTION. *Where suit is pending to test legality of proposed expenditure of public funds, equity should leave citizen to intervene therein or appear as amicus curiae.*

Where a suit is pending between the proper authorities to test the legality of a proposed expenditure of public funds already in the treasury, in a court of competent jurisdiction equity should not interfere, but should leave the citizens to intervene in such suit or appear as *amicus curiae* therein.

4. MANDAMUS. *Circuit court has jurisdiction on mandamus to decide authority of board of school trustees to expend public funds for given purpose.*

The circuit court has jurisdiction on a mandamus to decide the extent of the legal authority of the board of school trustees to expend public funds for a given purpose in a suit between such

board of trustees and the clerk, whose duty it is to issue warrants on such funds in proper cases.

*Corpus Juris-Cyc. References: Injunctions, 32CJ, p. 240, n. 51; p. 246, n. 14 New; Mandamus, 38CJ, p. 919, n. 26; Schools and School Districts, 35Cyc, p. 1050, n. 9; p. 1051, n. 24. As to application to governing body of municipality for relief, as condition of right of citizen to maintain suit to enjoin action by municipality, see annotation in 8 L. R. A. (N. S.) 574; 19 R. C. L. 1164.

Appeal from chancery court of Oktibbeha county.

Hon. Allen Cox, Chancellor.

Suit by F. L. Hogan against J. A. McKee and others, trustees of the Starkville separate school district, for an injunction. From a judgment overruling a demurrer to complainant's bill, defendants appeal. Reversed, and bill dismissed. See also post page 767.

*McIntyre & Roberds, Will E. Ward* and *Jno. D. Greene, Jr.,* for appellant.

I. We submit that under our laws an individual taxpayer is without authority to bring this suit. *Baird* v. *Georgia Pac. R. R. Co.,* 12 So. 557. The same argument is peculiarly applicable to the case at bar where the trustees of the Starkville separate school district were proceeding to build a suitable and adequate building for the education of the youth of the district. If the appellee, as an individual taxpayer could maintain this suit, then some eighteen hundred other taxpayers could likewise maintain a suit. The latest utterance of our court on this point is *American Oil Co. et al.* v. *Interstate Wholesale Grocers, Inc.,* 138 Miss. 801, 104 So. 70.

The same reasoning specially applies to the case at bar. The complainant in the court below and appellee here, has no more right to bring this suit than any one of the other eighteen hundred taxpayers would have. He is affected in no wise differently from any other taxpayer. The board of trustees is clothed with full and complete authority and discretion in erecting, furnishing and

equipping the school building, and it should not be annoyed at the whim of any taxpayer who may feel or have an imaginary objection to the location of the building.

II.   The court will note further that this is not a bill to enjoin a case at law as the board of trustees is not enjoined from prosecuting the mandamus case in the circuit court; and we submit that every issue raised by appellee in his bill could have been determined in the circuit court; and the chancery court ought not only to have declined to entertain the suit, but, in fact, had no right to entertain it. *Ricks* v. *Richardson,* 70 Miss. 424.

There are no such conditions existing in the case at bar, as in *Humphreys County* v. *Cashin,* 101 So. 351.

There are no interested parties in the mandamus suit in the circuit court whose interests conflict. The only question to be determined in this lawsuit is whether or not the board of trustees of the Starkville separate school District had a right to purchase the land upon which to erect the building; and if their acts in so purchasing were *ultra vires,* the circuit court would so hold; this was the only question involved in the injunction proceedings brought in the chancery court; there was no reason, even imaginary, why the suit should be brought in the chancery court; and the chancellor should not have assumed jurisdiction in the matter, there being no equitable question in the bill alone.   Section 608, Code of 1906 (Section 368, Hemingway's Code).

*W. W. Magruder,* for appellee.

The right of an individual citizen and taxpayer to protect public funds, in which he is interested as such taxpayer, from unauthorized diversion and misappropriation has never been questioned in our state by any decision of this tribunal. The qualified electors of the Starkville separate school district voted these bonds in the sum of one hundred thousand dollars, not for the purchase of real estate, even if they had been vested with

such power under the statutes, but they voted such bonds in order to *erect and equip* a school building.

The board of trustees has no more right to spend eight thousand, five hundred dollars of this money for a purpose not authorized by the original resolution of the mayor and board of aldermen than they have to spend every dollar of this money for such unauthorized purpose.

The suggestion that a private citizen, a taxpayer, an owner of property in the Starkville separate school district, cannot by injunction protect his own property from an unauthorized diversion and misappropriation thereof by the board of trustees is in effect a denial of due process under the constitution of our state and under the federal constitution. It is a confiscation of his property or his proportionate interest at the behest of those who deny that the will of the people, the welfare of the people, is the supreme law.

Our position is in harmony with recognized precedent, without exception, in all jurisdictons so far as we are able to dscover: *Underwood* v. *Wood* (Ky), 15 L. R. A. 825; *El Reno* v. *Cleveland-Trinidad Paving Co.* (Okla.), 27 L. R. A. (N. S.) 650; *Mauldin* v. *Greenville,* (S. C.), 11 S. E. 434; *Zwelly* v. *Casper,* 63 L. R. A. 133; *Davenport* v. *Buffington,* 97 Fed. 234; *McCullough* v. *Brown,* 23 L. R. A. 410; *State ex rel. McCain* v. *Metschan,* 41 L. R. A. 692; *Skinner v. Henderson,* 8 L. R. A. 55; *Butts County* v. *Jackson Banking Co.,* 15 L. R. A. (N. S.), a Georgia case; *Cooke* v. *Iverson,* 52 L. R. A. (N. S.) 415 and note, a Minnesota case; *Allen* v. *Milwaukee,* 5 L. R. A. (N. S.) 680; *Badger* v. *New Orleans,* 21 So. 870, 37 L. R. A 540; *Colorado Paving Co.* v. *Murphy,* 37 L. R. A. 630, 41 Law Ed. 1188; *Stevens* v. *Henry County* (Ill.), 4 L. R. A. (N. S.) 339; *Frame* v. *Felix* (Pa.), 27 L. R. A. 802; *Knowlton* v. *Baumhober et al.* (Iowa), 5 L. R. A. 841; *Pierce et al.* v. *Hagans,* 36 L. R. A. (N. S.) 1 and notes at 16, an Ohio case. In such notes the right of injunction in equity is declared in Illinois, Indiana, Oklahoma, Alabama, Wisconsin, Iowa, Kentucky, New Jersey, New Hampshire, California, Mis-

souri, South Carolina, West Virginia, and other states. See also *Daviess County* v. *Goodwin,* 116 Ky. 891; *Winn* v. *Shaw,* 87 Cal. 631, 25 Pac. 968; 22 Cyc. 910; *Greer* v. *Austin,* 51 L. R. A. (N. S.) 336; *Sugar* v. *Monroe,* 32 So. 961, 59 L. R. A. 723; *Hannan* v. *Board of Education,* 30 L. R. A. (N. S.) 214; *Honaker* v. *Board of Education,* 32 L. R. A. 413, 57 A. S. R. 847.; 32 C. J. 245, section 386.

This unbroken current of authority declares the right of injunction exists for the individual citizen and taxpayer, however humble he may be; to restrain by injunction the diversion, misapplication and misappropriation of public funds.

In *Hobbs* v. *Germany,* 94 Miss. 469, this court sustained the right of injunction in equity to a patron of our public school system, protesting against the exclusion of his son from school under unreasonable rules.

In *Clinton* v. *Turner,* 95 Miss. 584, the right of an individual owner of property to protest by injunction against damage to her property by the closing of city streets in violation of law is maintained.

In *Town of North Carrollton* v. *Town of Carrollton,* 113 Miss. 1, our court sustains the right of injunction to prevent the issuance of bonds under improper circumstances.

What distinction can there be in reason between an injunction to restrain the issuance of bonds and an injunction to restrain the misappropriation of the proceeds of a bond issue? This is not a case in which a taxpayer seeks to interfere with the discretion or discretionary powers of the board of trustees, but it is a case in which he seeks to restrain the board from the misappropriation of a public fund, in which he has a substantial interest.

II. The second suggestion involves an inquiry as to the jurisdiction of the lower court and now of this court to entertain our injunction suit at a time when mandamus proceedings were pending in the circuit court.

Under no possible theory of the law were such mandamus proceedings subject to consideration by Chancellor Cox on appellant's motion to dissolve our injunction, nor are such proceedings on appeal subject to the consideration of this court.

In no event could the mandamus suit have decided or determined anything. There were no proper parties to it. The board of trustees, under the pleadings in that mandamus suit, if they had a right to give orders to the city clerk for the issuance of warrants in payment for real estate for school purposes in a municipal separate school district, had upon the issuance of such orders exhausted their jurisdiction and authority.

Section 3231, Code of 1906, constitutes the statutory basis for mandamus proceedings. If appellants had been able to convince either the attorney-general or the district attorney of the *bona-fides* of their case and of the merit of their proposed mandamus proceedings, they could have secured an immediate trial in vacation under section 3240 of said Code.

Section 618, Code of 1906, provides the procedure for a motion to dissolve an injunction in vacation. Counsel for appellant undertook to avoid section 619 by filing a demurrer to our bill and then undertaking in the motion itself to suggest these mandamus proceedings entirely *de hors* the record. In Griffith's Mississippi Chancery Practice, section 452, it is clearly demonstrated that a motion to dissolve in the alternative must be either upon demurrer or upon answer.

The motion in the instant case was a hybrid, neither fish nor fowl. As Griffith points out in this section, a motion to dissolve an injunction is "never properly allowable as a substitute for demurrer." Also in this section on the authority of *Freemans* v. *Ammons,* 91 Miss. 672, he announces the clear and definite principle that in the absence of demurrer or plea or answer there is nothing before the court to justify an investigation.

145 Miss.—48.

It is A. B. C. law that a demurrer merely goes to the sufficiency of the bill and it is certain that the demurrer in this case does not and cannot raise any question as to the pendency of these alleged mandamus proceedings. It is equally certain under the statute and under the law as stated by Griffith that in the absence of a plea or answer, there is nothing before the court to justify an investigation beyond the questions properly raised by demurrer as to the sufficiency of the bill.

Mr. Griffith again says in this same section: ''It is not within the legitimate functions of a motion to become a substitute for any formal pleadings in that behalf.''

Chapter 283, Laws of 1924, forbids the diversion of public funds created by a bond issue from the purpose declared by the mayor and board of alderman in its original resolution for such bonds. Such diversion under the statute constitutes a misappropriation of public funds, a criminal offense.

*McIntyre & Roberds, Jno. D. Greene* and *Will E. Ward,* in reply, for appellant.

In appellee's brief we fail to find a single Mississippi case cited that authorizes a private citizen in a case of this nature to maintain a suit. He cites numerous cases from without the state and brushes aside as of no effect the cases that were cited by us in our brief.

We have consistently maintained from the very inception of this litigation that the circuit court, the court of competent jursdiction, having assumed the trial of these issues, the chancery court was, and is, without jurisdiction to entertain a subsequently instituted suit involving the same questions, appellee's supplemental brief to the contrary notwithstanding.

Argued orally by *A. J. McIntyre* and *Will E. Ward,* for appellant, and *W. W. Magruder,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was complainant in the court below, and filed a bill for an injunction against the trustees of the Starkville separate school district, alleging that the complainant was a resident of the said school district and a taxpayer thereof; that on or before the 15th day of August, 1925, said separate school district issued and sold, as provided by law, negotiable bonds of said district for one hundred thousand dollars for the construction of a high school building for the said separate school district. It was further alleged that the Merchants' & Farmers' Bank was a depository for such funds, and that the said funds realized from the sale of the bonds were deposited in said depository.

It was further alleged that the board of trustees had recently selected a site owned by certain private citizens for the location and construction of the said school building, at and for the sum of eight thousand five hundred dollars, to be paid from the proceeds of the bond issue on deposit in the said depository, and that the board of trustees had directed the city clerk to issue a warrant for the payment thereof, and that deeds had been executed and deposited in escrow in the bank to be delivered upon payment of the purchase price. It was then alleged that the trustees had no legal authority for the selection and purchase of such property for said school building, and that the payment of such money for such school lot would be a diversion and misappropriation of the public funds of the separate school district.

It is further alleged that the defendants, unless restrained, will consummate the purchase of said property, and that such act is *ultra vires*. It is further alleged that the complainant had no adequate and efficient remedy except through injunction, and, as a taxpayer of the said district, he had the right to protect his interest in said public funds from misappropriation to an improper, unauthorized, and unlawful purpose as contemplated by

the said board of trustees, and prayed for an injunction.

The defendants demurred to the bill and filed a motion to dissolve the injunction. In the motion to dissolve the injunction a pending suit in the circuit court was alleged to be pending, in which the legality of the act of the board was being litigated between the board of trustees and the town clerk. Copies of all papers in reference to the buying of the school lot and issuing of the bonds, including a copy of the mandamus petition and all of the proceedings in the circuit court, were attached to the motion, which suit in the circuit court showed that the trustees had ordered the clerk to issue the warrant for eight thousand five hundred dollars, and that deeds had been executed by the owners of the property and placed in escrow in the bank to be delivered on payment of the purchase price, and that the board of trustees had directed the clerk to issue such warrant on such funds derived from such bond issue in the depository, and that the clerk had refused to do so and had challenged the authority of the board of trustees to purchase said property and pay therefor out of the proceeds of the bond issue. These pleadings in the circuit court showed that the matters at issue involved the right and power of the school trustees to purchase the said property and pay for it with money derived from the sale of bonds, the money for which was on deposit, and that they were being litigated in a competent court of jurisdiction between the trustees and the town clerk.

It will be noted that the bill filed by the complainant, Hogan, is an individual proceeding, and not a proceeding for and on behalf of the general public. The injuries he seeks to prevent are the injuries to himself as a patron and taxpayer of the school district, which are not shown to be different from other patrons and taxpayers, and he does not allege in his bill that he has sought to have the proper authorities institute the suit, or permit him to do so on behalf of the public, nor does his bill state that it is filed on behalf of all the taxpayers and patrons

of the school of such district, nor does it invite others to join therein.

The court below overruled the demurrer to the bill and granted an appeal to settle the principles of the case, and the cause was argued before the court and brief filed addressed mainly to the power of the board of trustees to purchase the school lot from such funds. The right of the complainant to maintain the injunction suit was also challenged in the argument and brief, and, after the submission of the cause, additional briefs were called for by the court addressed to the right of the complainant to bring individually a suit of injunction to restrain said purchase, and also whether the bill of injunction could be maintained even if he had such right to bring it individually, in view of the pending suit in the circuit court between the trustees and the town clerk.

It will be seen from the statement of the pleadings that the funds derived from the bond issue are in the public depository, and that no question of the rightfulness of the issuance of the bonds is involved here; the proceeds derived from them are public funds belonging to the separate school district as a legal entity, and the complainant in the bill has no right or interest in such funds whatever from that of the general public.

This suit is brought by the complainant to restrain the consummation of this purchase because of the injury that would result to the complainant alone. The title to the funds being in the separate school district, the municipality has the legal title thereto and the right to maintain whatever suit is necessary for the protection of such funds. It is settled law in this state that a person has a right to maintain an action to restrain the infliction of an injury to his property, person, or reputation regardless of whether that injury is done by public officers claiming to act under lawful authority. *Hobbs* v. *Germany,* 94 Miss. 469, 49 So. 515, 22 L. R. A. (N. S.) 983; *Laurel* v. *Turner,* 96 Miss. 631, 51 So. 403; *Town of Clinton* v. *Turner,* 95 Miss. 594, 52 So. 261; and numerous other

cases of this and other states. But an entirely different question is presented when an individual undertakes to restrain officers from doing an act that only affects the title of the county, city, or state. Ordinarily, the authorities charged with the duty of bringing a suit to pro tect the funds and property of the state, or its subdivision or municipalities, are public officers having legal authority so to do. Municipalities have the power by statute to sue and be sued in all cases affecting their public rights and the duties of their servants and officers. If the separate school district is a separate entity from the municipality, being an agency of the state for state purposes or county purposes, other officers are given power to bring suits for and on behalf of the public to protect such interest. By section 310, Code of 1906 (section 3683, Hemingway's Code), it is provided that .suit may be brought, in the name of the county, where only a part of the county or of its inhabitants are concerned, and where there is a public right of such party to be vindicated. Unless some sufficient showing is made that public officers who are charged with the duty of bringing suits to protect the public interest will not act on being applied to, or on their own initiative, such bodies should bring such suits. They are selected with a view to their fitness and qualifications to so protect the public interest. A very instructive case involving matters of that kind is that of *Merrimon* v. *Paving Co.,* 142 N. C. 539, 55 S. E. 366, 8 L. R. A. (N. S.) 574. In the first syllabus of this case, it is stated that a citizen of a municipal corporation cannot, in the absence of statutory authority, maintain an action to prevent the payment of money on a completed contract, which is alleged to have been defectively performed, but which was within the contracting power of the municipality, until he has presented the matter to the governing body of the municipality. It was also held in the third syllabus of this case that to entitle a citizen to maintain an action to enjoin further payment on a public contract because of lack of opportunity to present the

matter to the board of aldermen, he must attempt to se-
cure a called meeting for this purpose. In this opinion
the court said:

"A citizen, in his own behalf and that of all other tax-
payers, may maintain a suit in the nature of a bill in
equity to enjoin the governing body of a municipal cor-
poration from transcending their lawful powers or vio-
lating their legal duties in any mode which will injuri-
ously affect the taxpayers—such as making an unau-
thorized appropriation of the corporate funds, or an
illegal or wrongful disposition of the corporate prop-
erty, etc.—is well settled [citing authorities]. Judge
DILLON says that the right to maintain such action is sus-
tained by analogy to the principle applicable to the rights
of shareholders in private corporations. 'In these the
ultimate *cestuis que trust* are the stockholders. In mu-
nicipal corporations the *cestuis que trust* are, in a sub-
stantial sense, the inhabitants embraced within their
limits. In each case the corporation, or its governing
body, is a trustee. If the governing body of a private
corporation is acting *ultra vires* or fraudulently, the cor-
poration is ordinarily the proper party to prevent or
redress the wrong by appropriate action or suit in the
name of the corporation.' "

It is stated at page 578, L. R. A. (142 N. C. 547, 55 S.
E. 368), of this case:

"The basic principle is that the corporation is a dis-
tinct entity, and not a mere copartnership, composed of
individuals. That by its charter certain powers are
conferred upon this legal person or entity, to be exer-
cised by the board of directors and other officers and
agents provided for and elected in the manner prescribed.
That when contracts are made by such boards or agencies
they are the acts of the corporation, and the duties as-
sumed and rights acquired are corporate. That so long
as the corporate acts are *intra vires* and the officers are
in the execution or discharge of such duties exercising
an honest judgment and discretion, the courts will not,

except within the limitations prescribed, interfere at the suit of one or more stockholders. The reason and policy upon which these limitations are based are so just and necessary to the existence of the efficient operation of corporate powers and functions that they require no vindication.''

The court reviewed a number of authorities, and at page 579, said:

'' 'The case just cited (*Hawes* v. *Oakland*) was afterwards cited and fully approved by the same court in *Dimpfel* v. *Ohio & M. R. Co.*, 110 U. S. 202, 3 S. Ct. 573, 28 L. Ed. 121, and it was therein further held that it must appear that the plaintiffs had exhausted all the means in their power to obtain redress of the grievances within the corporation itself.' The learned justice further says: 'It is not alleged, nor does it appear in any way, that the plaintiff had ever taken steps, within the company last mentioned, to correct the grievances of which he complained, although he had known of them for years; nor does it appear that he has even demanded and required of its officers that they take proper action to prevent them, or obtain redress on account of the same.' Mr. Clark, in his excellent work on Corporations (pages 389, 390), states the doctrine as laid down by Judge Miller, and adds: 'In addition to the existence of grievances calling for equitable relief, it must appear that the complainant has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances. He must apply to the managing officers to take action in the corporate name, and, if he fails with them, he must, if the matter will admit of the delay, seek to obtain action by the stockholders as a body, unless for some reason such attempt would be useless.' *Brewer* v. *Boston Theater*, 104 Mass. 378.''

In *Hawes* v. *Contra Costa Water Co.*, 104 U. S. 450, 26 L. Ed. 827, reviewed also in the above opinion, Justice Miller, of the United States supreme court, in a case involving a suit by a stockholder against a corporation,

discussing the question of the right of a stockholder on behalf of a corporation to interfere with its management, fully and elaborately reviewed the authorities up on that subject. After so reviewing them, he held as follows:

"We understand that doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit: Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity.

"Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases. But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corpo-

ration itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.

"The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity, and an allegation that complainant was a shareholder at the time the transaction of which he complains, or that his shares have devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could otherwise have no cognizance, should be in the bill, which should be verified by affidavit."

If the complainant seeks to restrain final action on behalf of the public rather than for his personal injuries, as distinguished from the public, he should so state and invite other interested persons to join in the suit. The right to such injunctions is discussed in 14 R. C. L., p. 329, section 30. It is there said:

"It is only where the injury is general and public in its effects, and no private right is violated, in contradistinction to the rights of the rest of the public, that individuals are precluded from bringing private suits for the violation of their individual rights. It has long been settled that a private citizen may maintain an action for a public wrong if he suffers an injury peculiar to himself, and not sustained by the public in general. Thus, a citizen may, in his own behalf and that of all other taxpayers, maintain a suit in the nature of a bill in equity

to enjoin the governing body of a municipal corporation from acting in excess or in violation of the powers conferred on it by law so as to cause a resulting injury to taxpayers. So property holders and taxpayers are proper parties, in a proceeding to enjoin the performance by public authorities of a municipality of a contract for street grading and paving, where such contract is illegal because entered into without sufficient advertisement. Similarly, where a statute amending a railroad charter provides that the road shall run in and through the corporate limits of a town, on certain conditions, the citizens of the town, on offering to comply with their part of the conditions, have, as a class, such special and particular interest in the matter involved as will support an application for an injunction to protect that interest. Such interest being common to all of such class as a community, and it being composed of numerous individuals, some may sue in behalf of all. In the same way persons belonging to a voluntary society and having a common interest, may sue in behalf of themselves and others having the like interest as part of the same society for purposes common to all and beneficial to all.''

In *American Oil Co.* v. *Interstate Wholesale Grocers,* 138 Miss. 801, 104 So. 70, this court held that a private citizen could not bring a suit to enjoin the board of supervisors from leasing the property of the county where he did not have a personal or property interest in the subject-matter of the suit. The court there said:

''It would be manifestly confusing to public business and troublesome to the officers charged with the administration of public affairs if any citizen of a county may at any time challenge the legality of the actions of the board of supervisors or of any of its contracts. Where the board undertakes to impose a burden upon a citizen without authority of law, he may then contest the legality of the action, not on behalf of the county, but to vindicate his own rights if he be affected by such action; that is to say, if he would have an additional burden imposed

on him by such act of the board. But this does not au-thorize him to litigate contracts made by the county in which he has no property or financial interest.''

In *Donald et al.* v. *Stauffer et al.,* 140 Mass. 752, 106 So. 357, certain taxpayers of the Tutwiler separate school district filed their bill in the chancery court of the Second district of Tallahatchie county against the trustees of the municipal school of said district, appellees in the said case, and sought to enjoin them for discharging a teacher in the said school. In discussing the case in the opinion, Judge ANDERSON, speaking for the court, said:

''Appellants' position is that, as taxpayers of the school district, they had the right to resort to injunction to prevent appellees, as trustees of the district from violating their contract with Campbell, because it might entail an additional tax burden on the taxpayers of the district. Appellees' position is that, even though it be true that in discharging Campbell and employing another in his place they violated their contract which might re-sult in additional burden on the taxpayers, nevertheless such alleged illegal acts cannot be controlled by injunc-tive proceedings; that in the employment and discharge of a superintendent of the school, although they may have acted illegally, still they were acting within the scope of their duties as trustees, within which their judgment and discretion cannot be controlled by injunction. *American Oil Co.* v. *Interstate Wholesale Grocers,* 138 Miss. 801, 104 So. 70, although not directly in point, has, in our judg-ment, material bearing on the question.''

The court said in that case, among other things:

''It would be manifestly confusing to the public busi-ness and troublesome to the officers charged with the ad-ministration of public affairs 'if any citizen of the county' may at any time 'challenge the legality of the actions of the board of supervisors or of any of its contracts.' ''

In the case of *Baird* v. *Georgia Pac. Ry. Co.* (Miss.), 12 So. 547; Id., 76 Miss. 521, 24 So. 195, a suit was filed by a taxpayer, a citizen of the county, for damages to

property involved by a breach of contract between the railroad and county in which the railroad agreed to build and maintain a track at a certain point. In discussing the matter, the court said:

"Waiving further consideration of the points presented on the motion and demurrer, we limit our inquiry to the question at the base of the controversy, and which renders the decision of any other of comparatively little importance. The question is, can any and every citizen of Sunflower county, or every nonresident of the county who owns property situated in the county, maintain such an action as was instituted by the appellant in the case against the Georgia Pacific Railway Company, for the alleged breach by appellee of the contract between said company and the county? If this question is answered in the affirmative, then the action by appellant in this case can be maintained, and then only; for nothing is shown by the record which would entitle the appellant to any preference over the humblest citizen of the county. Let it be admitted that a change was made after the road had been constructed and operated for a term of eight years, from Stoneville, by or near Eureka, to the western bank of Sunflower river, opposite to the town of Johnsonville, as required by the contract, and after that the terminal point was moved a distance of two miles, and located at a point beyond the corporate limits of said town, and that it was done without the consent of the citizens express by an election held to ascertain their will, and also without the sanction of the board of supervisors; and let it be further admitted that such change was a flagrant breach of the very condition upon which the approval of the citizens by said election was obtained to the subscription for stock, and for the issuance of bonds in payment thereof—with all those admissions, can the idea be entertained for a moment that all the inhabitants of the county, and all nonresidents owning property situated in the county, can maintain suits such as the one under review? If so, the maxim *'inter est republicæ ut*

*sit finis litium'* is obsolete, if it ever had any meaning."
12 So. 547.

It seems to us that the principles in the foregoing
cases are sound and conducive to the public tranquility
and welfare; and, before a private citizen can resort to
injunction to litigate public questions, he should show
that he has applied to the proper parties without re-
dress, and also that he has invited other citizens to join
with him in the litigation. The bill here wholly fails to
bring this case within that rule, and the demurrer to it
should have been sustained. In the next place, the mo-
tion to dissolve the injunction, it being already issued
temporarily, showed, that a suit was pending between
the proper parties in a court of competent jurisdiction
to determine the very question to be litigated here.
The court should have dissolved the injunction and dis-
missed the bill, leaving the parties, if they desired to
do so, to intervene as parties to the litigation in the cir-
cuit court, or to appear as *amicus curiœ* in that court.

It will be noted from reading the section of the Con-
stitution conferring jurisdiction upon the circuit court
that it has all jurisdiction not vested in some other court,
and, as construed by this court, it has all the jurisdiction
of the common-law courts of England, including the
King's Bench, which had supervisory jurisdiction over
inferior courts and judicial officers exercising jurisdic-
tion not conferred upon them by law. It is a fundamental
principle that an injunction, being an extraordinary legal
remedy, will not be granted where there is an adequate
and efficient remedy at law. There is nothing in the al-
legation of the bill before us that shows that any irre-
parable injury would result in awaiting the litigation
pending in the circuit court, and therefore, for this rea-
son, the injunction was improper in this case.

For the errors indicated, the judgment of the court
below will be reversed and the bill dismissed.

*Reversed, and bill dismissed.*