BROWN ET AL. *v.* REEVES ET AL.

[92 South. 825, No. 22495.]

1. COUNTIES. *Supervisor voting for appropriations for his own compensation acts ministerially and not judicially.*

Under section 346, Code 1906 (Hemingway's Code, section 3719), which provides that, if a board of supervisors shall appropriate any money "to an object not authorized by law," the members of the board voting for such appropriation shall be personally liable therefor, to be covered by suit in the name of the county or in the name of any taxpayer of the county suing for the use of the county, *held,* a member of a board of supervisors voting for an appropriation for his own compensation as such member does not act judicially·but ministerially, for he knows the facts and is presumed to know the law, and therefore there is nothing about which he can exercise his. discretion.

2. COUNTIES. *Supervisor held liable on his official bond for appropriation for his salary exceeding that authorized by law; "appropriation to object not authorized by law."*

Under the provisions of said statute, an appropriation by a board of supervisors to a member thereof as compensation for the services of such member, where the appropriation is in excess of that authorized by law, such an appropriation is "to an object not authorized by law," as defined by said statute, for which such member is liable on his official bond at the suit of a taxpayer of the county.

3. COUNTIES. *Salaries of supervisors, where classified by counties according to population, determined by federal census in absence of state census.*

Under sections 2194 and 2195, Code 1906 (sections 1878 and 1879, Hemingway's Code), which provide that the compensation of the members of the boards of supervisors shall be graduated in accordance with the number of inhabitants in the counties they serve, the classification of the counties for that purpose, in the absence of a state census, is determined by the federal census covering the period of the terms of the members of such boards.

4. EVIDENCE. *Courts will take judicial notice of federal census in ascertaining population of state and subdivisions.*

The court will take judicial notice of the federal census in ascertaining the population of the inhabitants of a state, county, city, town, township, village, or other political subdivision of the state.

APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Bill by T. R. Brown and others against Icham Reeves and others. From a decree dismissing the bill, the plaintiffs appeal. Reversed and remanded.

*H. H. Creekmore,* for appellant.

Section 293, of the Code of 1906, which provides for members of the board of supervisors to give bonds concludes with this clause: ". . . and such bond shall be a security for any illegal act of such member of the board of supervisors, and recovery thereon may be had by the county for any injury by such illegal act of such member; or any taxpayer of the county may sue on such bond, for the use of the county, for such injury, and such taxpayer shall be liable for all cost in case his suit shall fail."

Section 346 of the Code of 1906: "If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person, who is a taxpayer who will sue for the use of the county, and who shall be liable for costs in such a case."

On the statutes the appellants have the right to maintain this suit if the appellees received more compensation than fixed by law, and this question will be discussed later in the brief. Section 343 of the Code of 1906, declares that it shall be unlawful for the board of supervisors to allow a greater sum for the salary or fee of any officer than the amount actually due, and further provides that any such illegal allowance may be inquired into by the proper tribunal in any case.

Section 344 of the Code of 1906, denounces as a misdemeanor the reception by anyone of compensation not authorized by law and provides appropriate punishment of one convicted thereof. Section 343 was construed by this court in the case of *Board of Supervisors* v. *Klein*, 51 Miss. 807.

We find a case of the payment to an officer of an amount in excess of the compensation fixed by law and a discussion of the subject in our reports, being the case of *Howe* v. *The State*, 53 Miss. 57. Over and over again in the Howe case, in discussing an excessive allowance to the treasurer, the court not only holds that such allowance is not binding, but in language of no uncertain meaning holds that such appropriation was "to an object not authorized by law." And under section 293 of the Code of 1906, the appellants, as taxpayers, have a right to bring this suit, because the action of the board of supervisors under the cases cited heretofore is illegal, and certainly the payment of more compensation to an officer than provided by law is an injury to the county. *Paxton* v. *Baum*, 59 Miss. 531.

This case was construed by the chancellor to hold expressly that an overpayment to an object authorized by law is not within the statute, even if this overpayment is to a member of the board of supervisors in the matter of fees or compensation. With deference I submit that the learned chancellor misapprehended the effect of the decision in *Paxton* v. *Baum*.

Counsel for appellees cited and relied upon as decisive of this case the decision in the case of *Weissinger et al* v. *Davis*, 112 Miss. 625, 73 So. 617. In that case the court simply holds that the declaration filed by the plaintiffs clearly shows that the alleged illegal appropriation was made to an object authorized by law, and that there was no warrant of law for the maintenance of the action. Of course, if the declaration showed that the alleged illegal appropriation was made to an object authorized by law a taxpayer could not sue, but the decision does not state

what the averments of the declaration were, nor are the facts of the case stated by the reporter.

Counsel for appellees in their brief claim that section 2194 of the Code of 1906, which is section 1878 of Hemingway's Code, fixes the compensation of a member of the board of supervisors at the sum of four dollars per day and mileage, not to exceed the sum of four hundred dollars and mileage; and that section 2195 of the Code of 1906, which is section 1879 of Hemingway's Code, allows additional compensation for extraordinary services as much as six hundred dollars per year.

This statement of counsel is correct only as to counties having more than forty thousand inhabitants; and as to the pay of extraordinary services the statement is correct only in counties of more than forty thousand inhabitants, where the board works public roads with county convicts, or by contracts, or both, and are engaged in permanent road construction, there being no road commissioner. The contention of appellants is that the compensation provides for members of the board of supervisors of Harrison county by the statutes just referred to, is four dollars per day and mileage for regular meetings, not to exceed for both *per diem* and mileage for any year the sum of three hundred dollars, and for extraordinary services three dollars per day, not to exceed two hundred and fifty dollars for any year.

This contention of the appellants is based on the fact that for the years 1916, 1917 and 1918, Harrison county has less than forty thousand inhabitants in the sense in which this expression is used in the statute and also in fact. The census for 1910, of which the court will take judicial knowledge, shows that Harrison county had less than forty thousand inhabitants and likewise the census for 1920, which is now available discloses that the county still has less than 40,000 inhabitants.

A similar question was presented in the litigation recently over the status of the City of Oxford, and in that litigation it was decided by this court, that the Governor

had power to act under a statute as to classification of municipalities only after the census showing a change in the classification. It may be said that in that litigation there was a statute limiting the power of the Governor and fixing his authority in accordance with the census returns, but nevertheless, the decision follows the general rule as to the construction of statutes classifying counties or municipalities for any purpose according to population. *Boone* v. *Metts,* 88 So. 525.

Corpus Juris in discussing the subject of compensation of county officers uses this language: "Except where it is specifically provided that counties are not by operation of law reclassified under a new census, but remain in the old classification until reclassified by the legislature, statutes classifying counties according to population for the purpose of fixing salaries of county officers operate automatically to place a county in a certain class on the last census showing it to have the required population; but such statutes do not so operate merely on the county attaining such population, but only on the legal ascertainment of the fact by a census bureau, and they will not be allowed to operate so as to change an officer's compensation during his term in violation of constitutional provisions." 15 Corpus Juris, 499; *McFadden* v. *Borden,* 28 Cal. A. 47, 152 Pac. 977; *Faucher* v. *Rosenoff,* 65 Wash. 416, 118 Pac. 315; *Lewis* v. *Lackawanna County,* 200 Pa. 590, 50 Atl. 162.

I respectfully submit that the record shows a payment to each of the appellees of many hundreds of dollars in excess of the compensation fixed by law and that such excessive appropriation was an appropriation "to an object not authorized by law" and "was injurious to the county," and therefore that the learned court below was in error in dismissing the original bill and that this court should enter a decree reversing the case and enter a decree here for the amount of excess payments as disclosed by the record.

*J. L. Taylor* and *H. H. Evans,* for appellee.

Under section 2194 of the Code of 1906, as amended by chapter 221 of the Laws of 1916, a member is entitled to

receive the sum of four dollars per day and mileage not to exceed the sum of four hundred dollars and mileage. Under section 2195, Code 1906, as amended by chapter 175 of the Laws of 1916, a member is allowed to draw for service as much as six hundred dollars in any one year. Under section 4467 of the Code of 1906, he is allowed fifty dollars for services as provided by this section. Under the Laws of 1912, chapter 244 a member is allowed an additional sum of one hundred and fifty dollars per annum as provided in that chapter.

Now if there were forty thousand people in Harrison county then it would follow with the facts of this case that irrespective of the authority of a taxpayer to bring a suit of this kind that there could be no sort of recovery for the simple reason that the maximum amounts were not drawn by any member of the board. But it is said that there were less than forty thousand inhabitants in Harrison county, but we find that in the beginning of the period that Harrison county embraced what is now Stone county county and Harrison county and that with the census of 1920 after Stone county was taken off that there was shown to be some thirty-three thousand population but it is a matter of common knowledge that in taking the United States census that all the four to six thousand people in the Naval Station, although they were inhabitants of Harrison county were not listed in the census and that the Gulf Coast Military academy with a corps of teachers and pupils of nearly six hundred, although inhabitants were not listed in the population of Harrison county and that the same pertains to the Sea Shore Camp Grounds and other conditions in said county and particularly does it apply to, and did it apply, to a large number running into the thousands of laborers from October to April engaged in the oyster industry in the county and to a large number of tourists both in the summer and winter who were inhabitants of Harrison county at the time but who were not listed in the population so that from the testimony there is no doubt but that Harrison

county had at all times during the years 1916, 1917, and 1918, more than forty thousand inhabitants.

So we contend that it is amply shown that there were more than forty thousand inhabitants in Harrison county during the years 1916, 1917 and 1918, and this being true the board did not draw any more salary than they were entitled to draw under the law set out hereinbefore. Counsel for appellant cites a number of cases from other states but we submit that since our state has passed on this matter and this is a statutory proceeding that any decision from other states would be of no avail; besides they might have decided the case on a statute of that state different from our statute or have decided the case on the same statute differently or have decided the case where there was no statute at all.

So we submit that all of the allowances made were for objects authorized by law and under a statute authorizing amounts to be allowed and that the said case ought to be affirmed.

Anderson, J., delivered the opinion of the court.

Appellants, taxpayers of Harrison county, brought this bill in the chancery court for the use of that county against four members of the board of supervisors of said county and the United States Fidelity & Guaranty Company, the appellees. The case was tried on bill, answer, and proofs, and a final decree rendered dismissing appellants' bill, from which they prosecute this appeal.

Appellants alleged in their bill that they were taxpayers of Harrison county; that the appellees, other than the United States Fidelity & Guaranty Company, were members of the board of supervisors of said county for the term of four years beginning the first Monday in January, 1916; that the other appellee, the United States Fidelity & Guaranty Company, was the surety on each of the official bonds of said members of the board of supervisors; that during the years 1916, 1917, and 1918 said board appropriated to

the four members thereof sued in this cause (hereinafter referred to as appellees), each of whom voted for such appropriations, large sums of money in excess of that authorized by law as compensation for their services as such members. The bill sets out the amounts of such alleged excess appropriations. The allegations of the bill were denied by appellees, and there was a trial on bill, answer, and proofs and a decree rendered dismissing appellants' bill. There is no controversy as to the amounts appropriated by the board of supervisors to appellees as compensation for their services for the years 1916, 1917, and 1918.

There are two questions only in this case: First, under the law has a taxpayer the right to maintain a suit of this character? Second, in view of the fact that the compensation of members of boards of supervisors is graduated by statute according to the number of inhabitants of the county which they serve, how is the population of such county determined? Our statutes having any bearing on the question of the right of a taxpayer of the county to bring a suit of this character are sections 293, 343, and 346, Code of 1906 (Hemingway's Code, sections 3665, 3716, and 3719), which are as follows:

"293. Each member of the board of supervisors, before entering upon the duties of his office, shall execute a bond with sufficient sureties, but neither of them shall be surety for the other, payable, conditioned, and approved as bonds of county officers are required to be, in a penalty equal to five per centum of the sum of all the state and county taxes shown by the assessment rolls and the levies to have been collectible in the county for the year immediately preceding the commencement of the term of office of said member; and such bond shall be a security for any illegal act of such member of the board of supervisors, and recovery thereon may be had by the county for any injury by such illegal act of such member; or any taxpayer of the county may sue on such bond, for the use of the county, for such injury, and such taxpayer shall be liable for all costs in case his suit shall fail."

"343. It shall be unlawful for the board of supervisors to allow a greater sum for any account, claim, or demand against the county than the amount actually due thereon, dollar for dollar, according to the legal or ordinary cash compensation for such services rendered, or for salaries or fees of officers, or materials furnished, or to issue county warrants or orders upon such accounts, claims or demands, when allowed for more than the actual amount so allowed, dollar for dollar; and any illegal allowance by such board may be inquired into by the proper tribunal, upon legal proceedings for that purpose, whenever such matter may come into question in any case."

"346. If a board of supervisors shall appropriate any money to an object not authorized by law, the members of the board who did not vote against the appropriation shall be liable personally for such sum of money, to be recovered by suit in the name of the county, or in the name of any person who is a taxpayer who will sue for the use of the county, and who shall be liable for costs in such case."

It will be noted that a taxpayer is only authorized to sue when the appropriation is "to an object not authorized by law."

It is contended, on behalf of appellants, that any appropriation by a board of supervisors to the members thereof for their services as such members in excess of that authorized by law, is an appropriation "to an object not authorized by law," as defined by said section 346, Code 1906 (Hemingway's Code, section 3719); while, on the other hand, it is contended for appellees that the board in making such an appropriation, exercises a discretion given them by law, and that therefore it is an appropriation to an object authorized by law, although illegal, because the amount appropriated is in excess of that allowed by law. Appellants and appellees each insist that this question is settled in their favor by *Paxton* v. *Baum*, 59 Miss. 531. That case was most ably argued and presented to the supreme court, both at the first hearing and on suggestion of error. And judging from the opinion of the court by

Judge CAMPBELL delivered on the first hearing, and of Chief Justice CHALMERS on the suggestion of error, it was considered with great care by the court. A proper analysis of this case shows, in our opinion, that it is decisive of the question here involved in favor of the contention of appellants. That was a suit in the circuit court by taxpayers of Warren county for the use of that county, against a member of the board of supervisors of said county and the sureties on his official bond, the declaration alleging that the board of supervisors had made forty-seven appropriations which were unauthorized by law, and which were voted ·for by the defendant as a member of such board. The appropriations which the declaration set out as constituting breaches of the defendant's bond were as follows: ·

"(1) To G. M. Haszinger the sum of seventy-seven dollars and eighty-eight cents for material and work done on the Hall's Ferry road,• under a contract not let out in the open session of the board; (2) the sum of thirty dollars to A. L. Pierce, for specifications for work done on Cowan road; (3) the sum of twelve dollars to E. Kleinman, a former member of the board of supervisors, for services performed by him as a member of the board in its recess, called 'extra days' services'; (4) to D. Kennedy, the sum of ninety-nine dollars and seventy-five cents, for work done on bridges on the Warrenton road, upon a contract not let out in the open session of the board."

It will be noted that breach 3 as alleged consisted of the sum of twelve dollars appropriated to a former member of the board for services performed by him as such member in its recess called "extra days' services." There was a demurrer interposed to the declaration setting up the following grounds:

"(1) That the plaintiffs had no right to sue on the bond; (2) that nearly all the appropriations alleged as breaches were not 'to objects not authorized by law'; and (3) that the board, under the state Constitution, had exclusive ju-

risdiction of the matters mentioned and the right to make the appropriations."

The trial court sustained only the first ground of demurrer, which was that plaintiffs as taxpayers had no right to maintain the suit; and thereupon judgment was entered dismissing their suit, from which an appeal was taken to the supreme court. In the supreme court the judgment of the lower court was reversed. Under the reasoning of both opinions in the case the reversal was based alone on the ground that plaintiffs as taxpayers were entitled to recover under the third breach assigned in the declaration, that is, that defendant participated in the appropriation of a sum of money to another member of the board for his services, which was not authorized by law. As to the other breaches of the defendant's bond assigned in the declaration, they were held to be matters in the discretion of the board, about which they had the right to exercise their judgment, for which therefore a taxpayer had no right to sue. The opinion on the suggestion of error made it plain that a taxpayer could not sue for any breach of the defendant's bond assigned except the third, because the others involved appropriations to objects authorized by law, and therefore, even though illegal as to amounts, still a taxpayer could not sue therefor. On this particular branch of the case the court used the following language:

"But we cannot ignore the fact that supervisors in the discharge of many of their functions, are judicial officers, and especially so in adjudicating upon the validity of claims against the county. A law which would make them personally liable for every erroneous judgment rendered, if constitutional, would certainly have the effect of preventing any solvent man from accepting the office, or of becoming the surety of those who did."

On the other hand, the court made it equally plain that the third breach assigned, consisting of the illegal compensation allowed one of the members of the board, was not an appropriation to an object authorized by law, and

therefore a matter about which the board had no dis-
cretion, and for this reason a taxpayer had the right to
maintain a suit therefor.   On this proposition the court
said:

"Certainly they would be liable for all money illegally
voted by the members to themselves, since no officer can
claim to be acting as a judge in voting money to himself."

In appropriating money for their own services it cannot
be said that the members of a board of supervisors act
judicially, because, as well said by Chief Justice CHAL-
MERS in that case, one cannot act as judge in his own case.
The members of the board in making appropriations for
their own compensation act in a ministerial capacity.   They
know what services they have rendered.   No evidence is
necessary on that subject.   They know the facts, and are
presumed to know the law, and are so interested in their
own behalf that they are not capable of exercising any
discretion on the question of their own compensation.
Therefore we hold that an illegal appropriation for this
purpose is an appropriation "to an object not authorized
by law," for which a taxpayer may sue under our statute.
In other words, such an appropriation, in so far as it is
illegal, is an appropriation "to an object not authorized
by law," as defined by the statute.

The next question, in view of the fact that the compen-
sation of members of boards of supervisors is graduated
under sections 2194 and 2195, Code of 1906 (Hemingway's
Code, sections 1878 and 1879), according to the popula-
tion of the county which they serve, is: How is such pop-
ulation ascertained?   Appellants contend that appellees'
compensation for the years in question is to be based on
a population of less than forty thousand inhabitants;
while the appellees contend that it is to be based on a
population of forty thousand inhabitants or more; and
appellants contend that resort must be had to the federal
census to determine to which class Harrison county be-
longs, whether to a county with a population of forty thou-
sand inhabitants or more, or to a county with less than

forty thousand inhabitants. There is no authority of law for a board of supervisors taking a census of a county, and, although the legislature is authorized by section 105 of the Constitution to provide once in every ten years for the enumeration of the inhabitants of the state, as well as the qualified electors thereof, no such census has ever been taken under the Constitution of 1890, and probably not since the Civil War. The legislature, in adopting the statutes referred to above, graduating the compensation of members of boards of supervisors according to the population of the counties they serve, doubtless had in mind the fact that this section of the Constitution had never been put in force by appropriate legislation, and probably would never be done because of the fact that, for all state purposes, the federal census had been and would continue to be sufficient. By section 256 of the Constitution it is provided that the apportionment of the senators and representatives in the legislature may be according to the federal census of 1900 and decennially thereafter. This provision of the Constitution bears out the idea that the legislature intended, in the absence of a state census, to look to the federal census for all state purposes.

The authorities are all agreed that the courts will take judicial notice of the prevailing federal census; that they will take judicial notice of the federal census in ascertaining the population of the state, county, city, town, township and village. 23 C. J. 161. In 15 C. J. p. 499, section 163, this language is used:

"Except where it is specifically provided that counties are not by operation of law reclassified under a new census, but remain in the old classification until reclassified by the legislature, statutes classifying counties according to population for the purpose of fixing salaries of county officers operate automatically to place a county in a certain class on the last census showing it to have the required population but such statutes do not so operate merely on the county attaining such population, but only on the legal ascertainment of the fact by the census bureau,

and they will not be allowed to operate so as to change an officer's compensation during his term in violation of constitutional provisions."

However, there can be no difficulty in classifying Harrison county so far as its classification affects appellees' compensation for the years 1916, 1917, and 1918, for the federal census for 1910 as well as that for 1920 shows its inhabitants to have been less than forty thousand.

*Reversed and remanded.*